Good morning, and may it please the Court, my name is Andy Flagg. I'm a Deputy Pima County Attorney. I'm here on behalf of the appellant, Pima County Sheriff Mark Napier. I'm going to try to reserve a couple of minutes for rebuttal at the end if I can. We raised three issues in this case. If I can, I'd like to focus the oral argument time on what I think is the central issue, which is the District Court's ruling on the Rule 50 motion regarding Monell liability. And just so that I'm clear because of the time, this is really a case against Pima County, correct? Effectively, yes. It's a municipal liability claim. Yeah, nobody's really fighting about who the judgment is eventually against. It's not an individual capacity, but it's a Monell claim against the county. This is an official capacity claim. When we changed sheriffs, we changed captions. Okay. So this is effectively a municipal liability claim against the county. And it's based on a longstanding customer practice only. The trial testimony showed there's no official policy or procedure governing how Pima County Sheriff's deputies respond to calls like the ones they got. I read the testimony. And it seems to me there was a substantial amount of testimony that we have this call and containment procedure. And it was a procedure, an accepted procedure in the department. And we use it for, what do they call them, level one calls? Priority one calls. Priority one calls. And I call it a practice, Your Honor. Well, but whether it's a practice, custom, or formal procedure, if there was an established practice, custom, or formal procedure, that gives rise to Monell liability if, in fact, that procedure gave rise to the constitutional violation, right? If you can make that causal tie between the practice itself and the constitutional deprivation in a particular case. And I understand your argument that you didn't have this practice. But the question in this case is whether there was enough evidence to go to the jury on it. And why wasn't there enough evidence to go to the jury? In addition to these two incidents, there was other evidence about the practice. And these incidents seem to corroborate that. Why wasn't that enough to get this to the jury? I think what could have gone to the jury was that there was sufficient evidence to show that there was a practice of call and containment in general. Right. And I think it's important to note that that's not challenged as itself unconstitutional. Right. But the question is whether or not the practice involved an independent determination of probable cause before entering someone's homes. And there seemed to be a lot of testimony that once we get one of these calls, we're entitled to go into somebody's home and pull them out and arrest them without regard to an independent evaluation of whether there's probable cause. And I don't think that's a fair reading of the testimony. And I'll give a couple of reasons. First is Chief Gwaltney, that's the primary testimony that both the district court and the Larsons have relied on. Chief Gwaltney's testimony is about specific hypothetical scenarios that he's presented with. So one of them is what's called Scenario 6, which is a training scenario that the deputies use when they're in the academy, which has a specific set of opportunities encountered on May 23rd, 2013. And there's discussion of a call regarding guns, threats, gunshot, those sorts of things. And it's important to note, I think, also that Chief Gwaltney was precluded by the district court from testifying about the specific events, his opinion about specific events of May 23rd, 2013. An issue that you do not raise on appeal. We're not raising that on appeal. Okay. So what he didn't get to say doesn't help us. Well, except that it puts in context what he did say. I know, but you either have to appeal the exclusion of that testimony or not tell us what he would have said. You don't get to do it both ways. And I'm sorry, Your Honor, I'm not trying to tell you what he would have said. What I'm telling you is what he didn't say. Because what the district court said in the Rule 50 order is he was talking about what he would expect deputies to do on the night of May 23rd, 2013. And in light of the testimony that he wasn't allowed to offer an opinion on that, and instead he was talking about search and seizure scenario 6, and he's talking about a general hypothetical that's not necessarily the same set of facts as May 23rd, 2013, you can't read his testimony as saying, this is what we would expect deputies to do in response to the call that they got on May 23rd, 2013. Yeah, but I'm still at the same difficulty. If his testimony on its face would support the customer practice, and you didn't appeal the exclusion of his opinion, why shouldn't I take his testimony on its face as sufficient to get this to the jury? Well, I mean, I think you can take his testimony on its face for what it is, which is talking about how deputies would apply this in specific factual scenarios. And the point is, when you're talking about whether a general practice like callout and containment is constitutional or unconstitutional in a particular set of facts, you're talking about a specific factual scenario that you change one fact, you change a few facts, and the result might change. And his testimony, I think, is talking about specific factual scenarios and not just, we go out any time there's a DV call and we, you know, employ callout and containment. Well, I read his testimony. Or we employ it in the same way. I read his testimony as saying something a little bit different, and maybe that's why I think there might be a factual issue here. I think he, his testimony was, when we get a call like this one, he didn't say we did anything wrong here. When we get a call like this one, whether, I think in my view, there's just nothing close to probable cause that would allow a magistrate to issue a warrant to enter someone's house, here's what we do. That's our practice. And if that's true, then they have a custom or practice of entering houses without considering whether there's probable cause. I'll respond to that in a couple of ways. First of all, the jury was instructed about the emergency exception to the warrant here, so we weren't necessarily... It doesn't do away with probable cause, though. It just does away with the warrant requirement. No, I think the standard is reasonable belief that... No, but the emergency exception only for entering a house only allows you to enter a house if you have probable cause to believe a crime is committed, being committed therein. It doesn't do away with the probable cause requirement of the Fourth Amendment. It only does away with the warrant requirement, right? I respectfully disagree when it's, when you're talking about... So you think you can enter a house when you think, if you have some information that there's an emergency, even in the absence of probable cause that a crime is being committed inside? That's correct, Your Honor. What case do you cite for that? I can have just a moment here. I have a... Yeah. I mean, I'd always understood the emergency exception to be one of the exigencies that excuses the warrant requirement of the Fourth Amendment, but not the probable cause requirement of the Fourth Amendment for entering a home. The court describes two... The court has described two different exceptions. There's the exigent circumstances exception, which I think does require probable cause, and then there is the emergency exception, which deals with the community caretaking function that the deputies perform. And it's described in Hopkins v. Bonvicino and some other, I think United States v. Snipe is another case, and these are cited in the briefs, that talk about when to call, and they have a reasonable belief that there's an immediate need for their response in terms of, you know, protecting people from emergency and that sort of thing. I don't think there's a probable cause requirement in that context. In this case, they were responding to a call from someone that said a crime was being committed, right? Well, he's saying that there's an argument that there are guns, that there are threats going back and forth, and that there's potentially a gunshot. But isn't the caretaking requirement when somebody's in trouble? Help, I've fallen down and I can't get up. You can go to the house to help them get up, but you can't do it to investigate a crime, can you? Well, I think when the report of a crime would also constitute an ongoing emergency, I think that that would fall under... So you really put the exigent and the emergency exception together? It depends on the facts of the case. I think when the court looks at these cases, it looks at, in some cases, it analyzes both the emergency exception and the exigent circumstances exception. So I guess that gets to Your Honor's question with respect to probable cause. Our position is that probable cause was not required in this instance. Okay. And I'm sorry, I forgot. No, thank you. I took you astray. So your position is that we didn't really... Even if we had a practice of entering houses without probable cause, that was okay as long as the I think that the point is that the practice has to be evaluated in light of particular facts. And that's what Chief Gwaltney's testimony was talking about particular factual scenarios. It was not talking about blanket, in every case we get a DV call or we get an emergency call, we're going to enter the house. We're going to employ caught and containment in response to the specific facts of the case. And the deputies, in particular, I think Deputy McMurrick and Deputy Ray also testified to the effect that when they get there, they evaluate the scenario, they use their senses to determine what's going on. And I'm sorry, Chief Gwaltney also testified to the effect that he expects deputies when they get there to make the best decision based on the unfolding scenario that's going on before them. So I don't think it's a fair reading and I don't think the district court's reading of Chief Gwaltney's testimony is a fair reading in the sense to the extent it says that this is just applied across the board in an unconstitutional manner. And because there's no challenge to their brief, there's no challenge to caught and containment itself, there's no question that caught and containment can be employed in a constitutional manner, then you're into deliberate indifference. And I think that's what this court's case of support is. Once you're past that point of is there a policy or practice that is itself unconstitutional, you're into deliberate indifference. And the Larsons waived deliberate indifference twice. They waived it in the district court when jury instructions were being settled and I think it was because of that waiver that the jury wasn't instructed on deliberate indifference and they waived it again in their brief on appeal. They made no effort to show deliberate indifference and that's probably because there's no evidence that caught and containment was employed unconstitutionally except at most on two occasions. How do custom and practice and deliberate indifference mesh? I've always, you normally see deliberate indifference not in a custom or practice case but in a case involving a particular officer and an argument about qualified immunity. Do you really need, if you have a custom or practice that is the cause of the constitutional violation, do you have to show deliberate indifference also? If the custom or practice is not facially unconstitutional. Because in order to evaluate whether it's being employed in an unconstitutional manner, you have to look at applications to particular sets of facts. Is that right? Or what if I have a custom or practice that can be constitutional under some facts and not constitutional under others and I don't train my officers sufficiently to recognize the difference between the two? I'm not sure that's deliberate indifference as much as having a custom or practice that gives rise to the constitutional violation. Well, first I'll say this wasn't a fair to train claim. But second, when you're, I think you do have to look at deliberate indifference when you're, because the question is, is the municipality responsible for this particular violation? And in order to show that, you either need to show that the municipality itself promulgated or engaged in a practice that was itself unconstitutional, or that there were facts from which the municipality could be aware that there was a constitutional problem and then failed to remedy. That's what the deliberate indifference standard is about. Because otherwise you don't know whether the municipality is responsible for the particular violation or whether this was just the individual officers on a particular occasion. Let me ask the question slightly differently. And I think this is a fair formulation of the facts in this case. It's clear that the testimony of the Superior was that when confronted with a phone call like this one, whatever facts the person called in, our practice is to go to the house, go inside, arrest the people, pull out the people inside, do this call in containment. Is that fair? There were similarities between this call and the hypothetical that Chief Gwaltney was presented with. I think that... But the Chief also said what we did in this case was consistent with our practice. He did say that and the admissions said that as well. So given that, I mean, just given that, if that establishes the customer practice when confronted with a telephone call like this one, here's what we do. If that customer practice gives rise to a constitutional violation, why isn't that enough to get to the jury? Because any... First of all, there's a difference between what Chief Gwaltney testified to in the hypothetical and this case, which is... And the jury was presented with evidence that this caller had made prior unsubstantiated calls. And that goes to another issue that we've raised that I'm probably not going to have time to address. So that's pretty significant. But you've briefed it well, I see. We've briefed it. So that's a difference right there. But it's not enough to just come in and say, we have a general practice of call and containment and we think that the officers apply... Even if you assume that Gwaltney could have been testifying about this case, which I don't think he could have, that we had a practice of... Or that it was employed in this case in a constitutional manner because it depends on the application to particular sets of facts. And so if you have a policy or practice that is itself not unconstitutional, you can't look at individual applications or you have to look at individual applications to determine whether there's a constitutional violation, you're into deliberate indifference territory. I think that's what all of this court's cases on Monell suggest. And if I can, I'd like to reserve the rest of my time. Thank you, sir. We'll give you a minute for rebuttal. Thank you. Four years and a handful of nights ago, the sanctity of Jill and Rob Larson's home was violated not by a gang of criminal thugs, your honors, but by officers sworn to protect and defend them. And not just the Larson's, but the Jackson's immediately after. My name is Michael Garth Moore. It was my privilege to represent the Larson's in the trial below. It's my privilege to represent them here. Now, if I might, let me dispense with one issue, your honor, that was a discussion between you and my opponent. And that had to do with whether or not probable cause was required to enter these homes that night, this home that night, to seize my clients. In fact, what Hopkins v. Bovencino states, that this court rigorously guards against the expansion of the narrow emergency exception to protect the sanctity of the home. The question of the constitutional violation of the Larson's rights on the night of May 23, 2013, was not appealed. That is not before this court. Whether the standard was probable cause, or as my opponent says, and as Hopkins suggests, objective, reasonable, articulable facts is not at issue anymore. Why isn't it at issue in his JMOL motion? I'm sorry, your honor? It's an element of your case. Why isn't it at issue by virtue of his JMOL motion? It was, your honor. However, if we look at the assignments on appeal, it is not an assignment on appeal. The assignments... And we have the briefs, but he does argue on appeal that they were privileged to enter, if you will, under the caretaker doctrine. Under the emergency exception, truly correct. Yeah, you say, but he doesn't argue on appeal that they had probable cause to believe a crime had been committed. He hasn't challenged the underlying constitutional violation. His appeal is directed to the fact that the sheriff is not responsible, whatever that violation may be. However, if indeed the court considers that that's an issue on appeal, then the fact of the matter is this, and you had this discussion with my colleague here, if this court will read the defendant's excerpts of record, pages 218 through 226, in which the superior, Gwaltney, is being questioned by counsel for the defendant on direct examination, the last page of that, as your honor mentioned, the last page of that, Gwaltney says, in response to a hypothetical that in fact is the exact facts of this night, Gwaltney says, I would expect them to go in there, seize the occupants, search the home, no matter what. And it's not just Gwaltney's testimony, your honor. It's the testimony of McMurrick, it's the testimony of Serrano, it's the testimony of Ray, all of whom testified, we have to believe the caller 100%. How does that establish a custom of practice as opposed to a dumb reaction in this case? Because in responding to questions by myself and by the colleagues on the other side, what Gwaltney said is, what they did that night is our expectation. Well, that's why I'm asking. He said, this is what I'd expect them to do. I expect them to do this. My question is, is an expectation a custom of practice? Ah, but your honor, if I might, in Harper v. City of Los Angeles, a case that's been decided by me, this court said that a policy or custom may be inferred if, after constitutional violations occurred, officials took no steps to reprimand or discharge their subordinates, or if they otherwise failed to admit the subordinates' conduct was an error. In this case, not only one family, but two families were raided on that night. And repeatedly, repeatedly, those in charge, Gwaltney testifying for the sheriff, reaffirmed that that conduct was appropriate under their standard operating procedure. Moreover, your honor, in, for example, the Kirkpatrick case, Kirkpatrick v. County of Washoe, which I believe you concurred on, the court held that it's not only- May have been a mistake. I beg your- I may be. The court held that it's not always necessary to establish a pattern of conduct. It's necessary in Gantt, cited by our opponents here, it's necessary in Gantt either to establish a pattern of conduct or evidence that the practice is likely to lead to future violations. And here we have, over and over and over, Gwaltney testifying, this is what we do. So your opponent says, and I think quite correctly, this is not a facially unconstitutional practice in the sense that, on many occasions, it will be absolutely correct in response to an emergency call to NRO. Absolutely. So, and therefore you're in the as-applied area, and he says that you therefore have to show it's a result of deliberate indifference, and you, the jury was never instructed on that. No, your honor, I disagree wholeheartedly. I'm reading from Harper again, and the court in Harper said, and this applies directly to this case, the task force policy of readying cases for the filing of charges as quickly as possible, with or without probable cause, had the patently foreseeable consequence of causing the officer's arrest without probable cause. The unconstitutional policy at issue and the particular injury alleged are not only closely related, citing City of Canton v. Harris Supreme Court decision, they are cause and effect. And here, the policy was this, the practice was this, we go in and we do this no matter what the facts are on the ground. So if there's reasonable suspicion or probable cause, then it's not unconstitutional what we do. But if there is no reasonable suspicion or no probable cause, we do it anyway. And that's what Judge Burry described as the cookie-cutter approach. This was a constitutional time bomb waiting for the convergence of the correct events. And the only way, the only way that the defendant can challenge the correctness of the verdict and the judgment here is to ask this court to overturn 25 years of this court's jurisprudence on the issue of Monell. My colleague has said repeatedly, in order to prove, in order to prove that a policy or custom causes an unconstitutional violation, it by its own terms must be unconstitutional. That would render Harper, render Castro v. City of Los Angeles, render the Gantt case, render all this court's jurisprudence which address the issue, as you said, Your Honor, in discussing this initially. This court's jurisprudence says that if you have a standard operating procedure that is the moving force of the actions of the, not sole moving force, not sole force, but moving force, then that's a Monell violation for which the city or the municipality can be held liable. Now, if you accept that that's not really the appropriate elements to charge a jury, if you accept that in fact the policy must be unconstitutional on its face and must compel a violation, then you've gone beyond moving force to intent. From now on, if that's the charge that the jury gets, then it would have to be proved that the sheriff intended to violate the citizen's constitutional rights. Or, no, your opponent says it would be required to show that the policy was enacted with deliberate indifference to the constitutional rights. And whether there was deliberate indifference was not an issue here, because deliberate indifference is a different breed of cat in terms of establishing the Monell liability. There was no need for that. As we said, as the court said in Harper, exactly... But is your view that deliberate indifference is not needed if one establishes a customer practice that is the causal link? It's a red herring in this case, because on appeal what the sheriff is saying is the policy has to be unconstitutional by its own terms. Not on its face, by its own terms. By its own terms. Now, we have here a standard operating procedure. How can a standard operating procedure be unconstitutional by its own terms? The point of the matter is, is this turns this court's jurisprudence on its head. And no longer do we have the test of a standard operating procedure being a moving force which results in a constitutional violation. In fact, there is such mandatory precedent on this, your honor, that even if you were inclined to agree with them, I don't think this panel has the ability to overturn stare decisis in these cases. More importantly though, more importantly, the position of the appellant here, the position of the appellant, essentially would deprive any plaintiff, in almost any Monell case from here on out, of establishing Monell liability. This court in Castro said that the court, the jury, can take aggregated procedures of different entities, in that case the Los Angeles Sheriff's Department and Los Angeles County, it can aggregate those and put those into a policy or a custom by aggregating those different policies or procedures. If the policy has to be unconstitutional on its face, then the Castro decision is wrongly decided. It no longer is, even though an en banc decision, it no longer is appropriate. So I think I ask the court and I implore the court to look at exactly what the assignments of error here were. The Larsons failed to produce sufficient evidence of an official municipal policy that was itself unconstitutional. That's the assignment of error before this court. Not that there was no policy, but that it was itself unconstitutional. And then after I responded in my brief and said, well, wait a minute, we weren't even at that issue, then suddenly on the reply brief and now here, suddenly the issue is, oh, there was no policy at all. But when it came to this court on the notice of appeal and on the assignments of error, they didn't argue there wasn't a policy or a practice or a standard operating procedure. But your position is that you presented sufficient evidence to the jury of a policy or practice in any event. In any event. In any event. What I'm saying is that there was over, if you look at the cases in which this circuit, the Supreme Court of the United States and every other circuit has found that there's a Monell liability, there is overwhelming evidence in this case of a standard operating procedure that led, moving force, led to this constitutional violation. The deputies, the sergeants, and Gwaltney all said it out loud. We do this. This is the way we do it. And if someday they go to a house, and indeed there is someone, remember, in this case, Bill Wharf hadn't even identified a single individual because he said, I can't look out the window. I'm too afraid. They came to the home, they came to this area, and it was tranquil and it was quiet and my clients were asleep in their beds. And the next moment they were pulled out and handcuffed. And even when they said, we haven't heard anything, we haven't seen anything, we've been asleep, they were still marched out to the road and held there while other sergeants searched their home until Mr. Wharf walks up and says, well, maybe it wasn't that home. Maybe it was that one. And then what did they do? Instead of stopping, and I refer to the last case that was argued, instead of stopping and saying, well, gosh, maybe this other information we have about Wharf maybe suggests that maybe we ought to do something or think about something before we go to the next house and assault these folks. But that's what they did. This is not an isolated incident. This is what they do. We don't know how many other families this has happened to. We don't know. But we know. Your Honor, there's a case that's escaping me now. And I wish I remembered it. But that case, and it's among the brief cases, Sandoval, that Judge Burry cited, the Sandoval decision. Sandoval holds that when the officers arrive at a place and what they find when they arrive on a 911 call is a condition that could be either innocent or could be consistent with some kind of criminal activity. They can't do anything until they do further investigation. This night, there was no evidence whatsoever when they arrived that there had been any kind of violent disturbance in that area. Hadn't Mr. Wharf said that he heard shots from that house? He heard a pop. A pop that he thought was a gunshot. That he thought was a gunshot. Absolutely. Isn't that some evidence of an emergency? That is some evidence, Your Honor, sufficient to bring the deputies to the house, sufficient to bring them to the area. But remember, as opposed to the other cases in which this court has found that, yes, there to see if someone's dead inside? The deputy cannot go into the house in absence of the emergency exception, which means the deputy has to have... Somebody may be bleeding to death and he can't go into the house? The possibility, the possibility that someone might be bleeding to death is not enough. CB versus City of Sonora. Anything is possible is not a sufficient basis for invoking the emergency exception and going into the home. You need more. But I take it your initial point, and I want to make sure I understand it, is that because their only argument on appeal was that a customer practice was not established, that we assume, as the lower court found and the jury found, that there was a constitutional violation here. Well, yes, Your Honor, and there was overwhelming evidence below. Whether or not there was an emergency or not an emergency was resolved below. That's not in front of us. All that's in front of us is whether a customer practice led to the constitutional violation. I'm responding, Your Honor, to the appeal assignments of error that were brought up by... Why not? But I want to understand, because I think Judge Baez's point has some force, if we were looking at whether or not there was a Fourth Amendment violation in the first place. But your argument is that on appeal, there are arguments not about whether there was a Fourth Amendment violation, but whether it was caused by a customer practice. That's correct. However, in the brief, as we said, Judge Baez, there has been an overwhelming number of cases in which it has been found. And, in fact, the Teneman case, which I cited out of the Tenth Circuit, which has held that in every case in which the emergency exception has been validly brought into play, the officers have arrived to find a violent ongoing disturbance or have arrived to find evidence of violence having happened. No other court, other than in those circumstances, has said, yes, that was appropriate for these deputies to do. Mr. Moore, I think you've exceeded your time. Thank you very much. I thank you, Your Honor. We'll give you a minute for rebuttal. Thank you, Your Honor. I'd like to try to make two points. First of all, when deputies are responding to an emergency call and they encounter, in particular, a scenario that's maybe different than expected, it's going to depend on what that particular scenario is as to whether their response is constitutional or not. In the case I would suggest that the court take a look at is United States v. Black. We cited that case. You know, the deputies get to a DV call and their scenario is other than what they expected. The court still held that the protective sweep of the apartment was allowed under the emergency exception based on the reasonable belief. Could you respond to Mr. Moore's initial point, because I was a little confused on this one? As I go back and look at your brief again, you're really arguing that the 50, the JOMO, renewed JOMO motion should have been granted because there wasn't sufficient evidence of a customer practice. Does your brief contend that what was done here was constitutional? We're not challenging the jury's determination. Okay. So we have to start with the assumption that there was an unconstitutional action here. And then the question is whether it resulted from a customer practice of the Pima County Sheriff. Correct. And I'd encourage the court to take another look at Gant and Castro, because the court did go on to analyze deliberate indifference in those cases. So I think they support the position that deliberate indifference is the standard. Thank you very much. Thank you. Thank both counsel for a very illuminating argument. And we'll pass to the next case. Pardon me. Larson v. Napier will be.
judges: Bea, Hurwitz, Kobayashi